IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02480-MSK

TONY COOPER,

     Applicant,

vs.

ARI ZAVARAS, Executive Director, Colorado Department of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

This matter comes before the Court on Petitioner Tony Cooper's Application for a Writ

of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1).[1] Having considered the Application,

Respondents' Answer (Doc. # 12), and the Petitioner's Traverse (Doc. # 19), along with the

state court trial record, the Court

     **FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254 and 1331.

---

[1]Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

## II. Background[2]

Based upon an incident that occurred on April 22, 2002,[3] the Petitioner was charged in Colorado state court with one count of attempted first degree murder after deliberation, possession of a weapon by a previous offender, and crime of violence. The Petitioner defended against the charges at trial by asserting self-defense and self-intoxication. In March 2003, a jury convicted the Petitioner on the charge of attempted first degree murder. The trial court subsequently found the Petitioner guilty of two habitual criminal charges based on his prior convictions for possession of a controlled substance and attempted escape. The trial court sentenced him to a seventy-two year term in the Colorado Department of Corrections.

The Colorado Court of Appeals affirmed the Petitioner's convictions on direct appeal. *See People v. Cooper*, No. 03CA1581 (Colo. App. July 21, 2005) (unpublished decision),

---

[2]This general introductory background is taken from the statement of the case and statement of the facts in the Petitioner's opening brief on direct appeal. Answer Ex. A (Doc. # 12-1, at 102-105 of 134). For ease of reference, the Court's citation to the exhibits attached to the Respondents' Answer includes the page numbers assigned to the exhibits by the Court's electronic filing database.

[3] On April 11, 2002, the Petitioner's girlfriend came home from a bar with another man (the victim). The girlfriend knocked on the door of her apartment because she had left her key with her roommate. To her surprise, the Petitioner opened the door. He and the victim did not exchange words, but the victim was angry that there was a man in the apartment, and left the building. The girlfriend followed the victim outside to a parking lot. While the girlfriend and victim conversed, the victim stated that the Petitioner was approaching. The girlfriend advised the victim to leave because the Petitioner was "crazy." The victim jumped in his car and backed up. The Petitioner started shooting at the victim's car. The victim then drove away to the edge of the parking lot, leaned out of the car and yelled that he was going to come back and "get" the Petitioner and the girlfriend. The victim left the premises, but eventually returned to the parking lot and identified the Petitioner to the police as the person who shot at his car.

Answer Ex. A (Doc. # 12-1, at 34-51 of 134).  His request for certiorari review by the Colorado Supreme Court was denied on December 19, 2005.

The Petitioner then filed a motion for post conviction relief under Colo. Crim. P. Rule 35(c), which was denied by the trial court on May 18, 2005, without hearing.  The Colorado Court of Appeals affirmed.  *People v. Cooper,* No. 06CA2306 (Colo. App. June 19, 2008) (unpublished decision), Answer Ex. B (Doc. # 12-2, at 17-29 of 87).  His request for certiorari review by the Colorado Supreme Court was denied on October 14, 2008.

The Petitioner commenced this action on November 14, 2008.  In his first five claims, the Petitioner asserts that his Fourteenth Amendment due process rights were violated because: (1) the State failed to preserve exculpatory or potentially exculpatory evidence; (2) the trial court denied defense counsel's challenge for cause to a biased juror; (3) the trial court failed to properly instruct the jury on the defense of self-intoxication; (4) the trial court failed to properly instruct the jury on the *mens rea* element of attempted first degree murder; and, (5) the evidence was insufficient to support the jury's finding that he was guilty of attempted first degree murder after deliberation.

In claims six and seven, the Petitioner contends that his representation at trial was constitutionally ineffective in two respects.  First, that Petitioner's counsel failed to conduct an adequate pretrial investigation (claim six), and second, that Petitioner's counsel failed to request a curative instruction when, during voir dire, a juror expressed his belief that the Petitioner was guilty (claim seven).

In his eighth claim, the Petitioner contends that his seventy-two year sentence is not proportionate to his crimes, in violation of the Eighth Amendment.

The Court finds, and Respondents concede, that the Application was timely filed under 28 U.S.C. § 2244(d). The Court further finds, and Respondents concede that, except as to part of claim one, Petitioner exhausted his state court remedies for each of his claims. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994). Respondents argue that Petitioner failed to exhaust part of claim one and has therefore procedurally defaulted that claim. The Court addresses application of the procedural bar below, before reaching the merits of Petitioner's claims.

### III.   Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super- appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody simpliciter." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a federal district court may only consider

a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether the Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ ( 10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court

misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious

misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v.*

*Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a

writ of habeas corpus only if the state court decision was based on an unreasonable

determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court

must presume that the state court's factual determinations are correct and the Petitioner bears the

burden of rebutting the presumption by clear and convincing evidence. "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"

*Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003)).

The Court grants AEDPA deference to state court decisions that applied a legal standard

either identical to the federal standard or more favorable to the habeas applicant than the federal

standard. *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005).

## IV.  Analysis

### A.  Procedural Issue

The Petitioner asserts in his first claim that because law enforcement authorities failed to

impound the victim's vehicle immediately after the shooting, he was deprived of exculpatory or

potentially exculpatory evidence in violation of his right to due process. Respondents argue that

the Petitioner has procedurally defaulted in pursuing  a component of this claim in the state

courts -  that the State failed to preserve *potentially* exculpatory evidence.

The State's failure to preserve potentially exculpatory evidence violates the Constitution only if the Petitioner demonstrates that law enforcement authorities acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). On direct appeal, the Colorado Court of Appeals declined to consider the issue of whether the police acted in bad faith when they failed to impound or otherwise preserve the victim's vehicle because the Petitioner failed to raise that issue in the trial court:

> We need not address defendant's arguments that the gross negligence of the police constituted bad faith and that the victim further altered his car after the court ordered him to preserve the car because defendant did not raise them below. [citation omitted].

Answer Ex. A (Doc. #12-1, at 37 of 134).

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights. *See O'Sullivan*, 526 U.S. at 845 (a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Dever*, 36 F.3d at 1534 (fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a post-conviction attack."). A claim has been exhausted when it has been "fairly presented" to the state court as a violation of federal law. *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A state prisoner bringing a federal habeas corpus action bears the

burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.1992).

This Court will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the Petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749-50.  "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).  For the state ground to be adequate, it must be " 'strictly or regularly followed'" and "applied 'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).  Concerns of federalism and comity dictate that the federal courts respect the state's procedural rules.  *Coleman* 501 U.S. at 751.

The Colorado Court of Appeals did not address Petitioner's argument that the gross negligence of the police officers constituted bad faith based on the state procedural rule that claims not presented to the trial court will not be reviewed on appeal.  This rule has been regularly followed by the Colorado appellate courts and applied even-handedly to similar claims. *See e.g. People v. Young*, 987 P.2d 889, 893 (Colo. App. 1999) (suppression claim not raised at trial will not be reviewed on appeal) (citing *People v. Jansen*, 713 P.2d 907, 912 (Colo. 1986)); *People v. Cagle*, 751 P.2d 614, 619 (Colo. 1988) ("It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal."); *People v. Lesney*, 855 P.2d 1364, 1366 (Colo. 1993) (rejecting equal protection and due process claims as not raised in trial court).  The Court finds that the Colorado Court of Appeals' resolution of the Petitioner's claim

constitutes an adequate and independent state procedural ground for defaulting the Petitioner. For this Court to disregard the procedural default, the Petitioner must demonstrate cause for the default and prejudice to him.

"Cause" to disregard a procedural default exists when some objective factor external to the defense impeded the petitioner or his counsel from complying with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Petitioner does not allege any external cause for his failure to raise bad faith conduct by the police as part of his claim in the state trial court. Instead, he simply asserts in his Traverse that it was implicit in his motion to dismiss filed in the trial court that law enforcement authorities were negligent in handling the vehicle. Traverse at 8. However, as noted by the Colorado Court of Appeals, the Petitioner did not argue that such negligence constituted bad faith. The Petitioner has thus failed to establish cause for his default or prejudice.

Moreover, the Petitioner has not asserted facts that would allow invocation of the "fundamental miscarriage of justice" exception to the procedural default doctrine. He has offered no facts to establish that he is actually innocent of the crimes. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (habeas petitioner claiming actual innocence must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt"); *Murray*, 477 U.S. at 496. The Court finds and concludes that the Petitioner procedurally defaulted the issue of whether law enforcement authorities acted in bad faith in failing to impound or otherwise preserve the victim's vehicle, and he has shown no justification for not honoring the state court's determination of default. Because bad faith conduct is an

essential element of Petitioner's due process claim under *Youngblood*, Petitioner's claim that the State failed to preserve potentially exculpatory evidence fails on both procedural grounds and on the merits.

**B. Analysis of Merits**

**1. Claim One**

The Petitioner's remaining allegation in claim one is that his right to due process was violated when the State failed to preserve exculpatory evidence. The Petitioner alleges that the law enforcement officials' failure to impound the victim's vehicle prevented a defense expert from conducting a trajectory analysis of the bullet holes, which would have demonstrated whether the Petitioner had the requisite mens rea to support the charge of attempted first degree murder.

Before trial, the defense filed a motion to dismiss based on the State's failure to preserve exculpatory evidence. The Petitioner argued in that motion that the vehicle "could have been tested for evidence of recent gunfire or lack thereof, including the location of any bullets or the path or their trajectory." State Court Record Vol. 1 at 93. At a subsequent evidentiary hearing, the investigative officer at the scene testified that

she photographed the bullet damage to the vehicle and conducted a superficial examination of the interior of the vehicle for bullets and bullet fragments, but then released the car to the custody of the victim because he did not want it damaged by further inspection. Vol. 6, February 10, 2003 Hearing Transcript at 79-80. The victim testified that after the shooting, he replaced the soft roof top of his vehicle, but not the interior part of that covering, so the hole from the bullet that pierced the cover remained visible from inside the car. *Id.* at 46, 55. The victim also

stated that he replaced the plastic tail light assembly on the vehicle, but did not repair or replace the metal frame beneath the plastic tail light pieces that contained bullet holes. *Id.* at 46, 52-53. The trial court denied the motion to dismiss based on its findings that the vehicle did not have an apparent exculpatory value at the time police officers released it to the victim and that the defense could have obtained comparable evidence by other reasonably available means. *Id.,* February 20, 2003 Hearing Transcript at 3-5.

A defense expert testified at trial that he examined the car with the victim's permission after the changes were made, but was not allowed to move anything inside the vehicle or remove any parts of the exterior. State Court Record, March 6, 2003 Trial Transcript at 65-66. He further testified that because the tail light assembly and roof top of the vehicle had been replaced, he was unable to conduct a trajectory analysis of the bullet holes and bullet impacts to those areas. *Id.* at 68-69.

The Due Process Clause of the Fourteenth Amendment requires the State to preserve evidence that "might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "To meet this standard of constitutional materiality, [citation omitted], evidence must possess both an exculpatory value that was apparent before the evidence was destroyed, and be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

The Colorado Court of Appeals affirmed the trial court's order denying the motion to dismiss based on the following reasoning:

Defendant's theory that the downward trajectory of the bullets showed he fired in self-defense would not have been apparent to the officers examining the car at the crime scene. In addition, the victim's repairs to make the car roadworthy did not alter the bullet holes in the frame and interior of the car. Defendant's claim that he was harmed by the inability to conduct a trajectory rod test is belied by his expert's testimony on the downward trajectory.

Answer Ex. A (Doc. # 12-1, at 37 of 134).

The Colorado Court of Appeals resolved the Petitioner's claim under the *Trombetta* standard. *Id.* (Doc. # 12-1, at 36 of 134). Accordingly, the Petitioner is not entitled to habeas relief unless the Colorado Court of Appeals unreasonably applied that test. *Williams*, 529 U.S. at 407-08. The state trial court's finding that the vehicle possessed no apparent exculpatory value is a finding of fact that is entitled to a presumption of correctness, which the Petitioner has not rebutted with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). He points to trial testimony by the defense expert that if the vehicle had been impounded and made fully available to both the State and the defense, further trajectory testing may have produced exculpatory evidence. This is insufficient to demonstrate a violation of the Petitioner's due process right under *Trombetta*. *See Youngblood*, 488 U.S. at 56 n.* (noting that the possibility that the destroyed evidence could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta*).

The trial court's finding that comparable evidence was reasonably available to the defense is also supported by the record. Photographs of the bullet damage to the victim's vehicle taken by law enforcement officers immediately after the shooting were admitted as exhibits at trial. State Court Record Vol. 10 at 84-96, 202-204. The defense had ample opportunity to cross

examine the prosecution witnesses about the photographs. Additionally, a defense expert rendered an opinion at trial about the trajectory of the bullets. State Court Record, Transcript of March 6, 2003 proceeding[4] at 82-89, 94-111. The jury considered evidence of the location of the bullet damage to the victim's vehicle, along with the other evidence at trial, and returned a guilty verdict. It is improbable that additional trajectory evidence would have created reasonable doubt in the minds of the jurors about the Petitioner's guilt.

The Colorado Court of Appeals' determination of Petitioner's claim was not an unreasonable application of *Trombetta*, nor did the state courts unreasonably determine the facts in light of the evidence presented. The Court therefore finds and concludes that the Petitioner is not entitled to federal habeas relief on his first claim.

## 2. Claim Two

In his second claim, the Petitioner asserts that he was denied an impartial jury when the trial court denied his challenge for cause. According to the Petitioner, the prospective juror had determined the Petitioner's guilt based on his opinion that citizens should not be allowed to possess handguns and that a person walking around with a handgun was "looking for trouble." The Petitioner further alleges that he was forced to exercise a peremptory challenge to remove the juror, and that he thereafter exhausted all of the peremptory challenges to which he was entitled.

_____

[4]The Court notes that the transcript of trial proceedings held on March 6, 2003 are not part of the bound volumes of the state court record filed in this Court, but is instead contained on a separate CD.

The Sixth and Fourteenth Amendments guarantee a defendant in a criminal trial the right to an impartial jury. *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). The constitutional mandate of juror impartiality requires that a juror be able to lay aside his or her opinion "and render a verdict based on the evidence presented in court . . . ." *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984). Whether a particular juror can actually meet this standard is "a determination [of the trial court] to which habeas courts owe special deference . . . ." *Id.* at 1038; *see also  Mu'Min v. Virginia*, 500 U.S. 415, 426, 428 (1991) (the trial court has broad discretion in determining juror impartiality; "[a] trial court's findings of juror impartiality may be overturned only for manifest error") (citations and internal quotation marks omitted).

A state court's factual determination on the question of whether a juror would be impartial and decide the case on the evidence is entitled to a presumption of correctness. *Patton*, 467 U.S. at 1038; 28 U.S.C. § 2254(e)(1). Accordingly, the question before this Court is whether there is fair support in the record for the state court's determination that the prospective juror would be impartial. *Patton,* 467 U.S. at 1038; *see also Wainwright v. Witt*, 469 U.S. 412, 426-29 (1985).

In addressing the Petitioner's claim, the Colorado Court of Appeals reviewed the entire voir dire of the prospective juror and determined, based on application of state case law, that "[b]ecause this prospective juror neither expressed a state of mind evincing enmity toward defendant nor indicated an inability or unwillingness to follow the law as directed, we perceive no abuse of discretion in the denial of defendant's challenge for cause." Answer Ex. A (Doc. # 12-1, at 38-39 of 134). Although the Colorado Court of Appeals exclusively applied state law,

the cases cited by it do not contain a legal standard "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to the correct legal standard. *Williams*, 529 U.S. at 406-07. The Court finds that the Colorado Court of Appeals reasonably applied the correct legal standard in this case. The Petitioner has therefore failed to demonstrate that he is entitled to relief on this claim under 28 U.S.C. § 2254(d)(1).

Moreover, the Court's review of the state court findings regarding the voir dire of the juror demonstrates that the factual determinations were reasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). The Colorado Court of Appeals found as follows:

> Here, during voir dire, a prospective juror stated that as a result of his experience as a trauma surgeon, he believed handguns should be banned in the United States. He explained: "I see the results of the drinking. I see the results of the gunshots. So I do have the overlay. Drinking and driving, drinking and firearms, neither one of them makes sense."

> When asked whether he could be objective and apply the law, the doctor responded that he "probably could" but "if defendant went into the bar with an unregistered handgun and was drinking, [he'd] be hard to convince that [defendant] was not guilty. During subsequent questioning, the doctor said that he "could be swayed" if the evidence indicated that defendant had acted in self-defense.

> He also agreed that he would consider the totality of circumstances in determining whether defendant had acted with deliberation.

> Because this prospective juror neither expressed a state of mind evincing enmity toward defendant nor indicated an inability or unwillingness to follow the law as directed, we perceive no abuse of discretion in the denial of defendant's challenge for cause.

Answer Ex. A (Doc. # 12-1, at 39 out of 134).

In denying the defense's request to dismiss the potential juror for cause, the trial court implicitly found that the prospective juror was not biased against the Petitioner. This finding, as well as the Colorado Court of Appeals' factual findings, are presumed to be correct and are supported by the state court record of the voir dire proceeding. *See generally* State Court Record Vol. 9. The Petitioner has not presented any clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Any ambiguity in the prospective juror's statements is insufficient to overcome the presumption of correctness. *Patton*, 467 U.S. at 1040.

Moreover, the Petitioner does not state facts to show that any of the jurors who actually served on the jury were biased or prejudiced against him. *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (where allegedly biased prospective juror is removed by defendant's exercise of peremptory challenge, any claim that the jury was not impartial must focus on the jurors who were seated for the trial); *see also Hale v. Gibson*, 227 F.3d 1298, 1320 (10th Cir. 2000) (to establish that a juror was biased, a habeas petitioner "must show more than that the juror had a preconceived notion of guilt; he must show that the juror had such a fixed opinion that he or she could not judge impartially.").

Finally, the Constitution is not offended where the trial court's denial of the defendant's request to strike a juror for cause requires the defendant to use a peremptory challenge to remove the juror, and the defendant thereafter exhausts his peremptory challenges. "'[P]eremptory challenges [to prospective jurors] are not of constitutional dimension,'" but are rather "one means to achieve the constitutionally required end of an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) (quoting *Ross*, 487 U.S. at 88). In

*Martinez-Salazar*, the Court examined "the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant's exercise of a peremptory challenge to remove that juror." *Id.* at 307. The Court held that "if the defendant elects to cure such error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." *Id.*; *see also United States v. Brooks*, 161 F.3d 1240, 1245 (10th Cir.1998) (even if the district court erred in refusing to excuse a biased juror for cause, the error was harmless because the defendant exercised a peremptory challenge to strike the juror). Accordingly, the Petitioner cured any constitutional error by the trial court when he used a peremptory challenge to achieve an impartial jury. *Martinez-Salazar*, 528 U.S. at 307; *Ross*, 487 U.S. at 88.

The Court therefore finds and concludes that the Petitioner is not entitled to federal habeas relief on his second claim.

### 3. Claims Three and Four

In his third and fourth claims, the Petitioner asserts that his due process right to have the prosecution prove every element of the charged offense by proof beyond a reasonable doubt was violated when the trial court failed to: instruct the jury that evidence of his voluntary intoxication could negate the "after deliberation" element of attempted first degree murder (claim three); and, failed to instruct the jury properly about the *mens rea* element of attempted first degree murder (claim four).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *In re Winship*, 397 U.S. 358, 364 (1970).  However, not every "ambiguity, inconsistency, or deficiency" in a jury instruction renders the instruction constitutionally infirm. *Middleton v. McNeil,* 541 U.S. 433, 437 (2004).  The Petitioner must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).  The pertinent question is "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process. " *Estelle*, 502 U.S. at 72 (internal quotation marks omitted); *Tyler v. Nelson,* 163 F.3d 1222, 1227 (10th Cir.1999) ("As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.") (internal quotation marks omitted).  A jury instruction may not be examined in artificial isolation, but must be viewed in the context of the overall charge. *McGuire* 502 U.S. at 72-73; *Boyde*, 494 U.S. at 378; *Middleton,* 541 U.S. at 437.  Where the instruction is ambiguous, a state court may properly rely on counsel's arguments to clarify and resolve an ambiguous jury charge in favor of the defendant.  *Middleton*, 541 U.S. at 438.

On direct appeal of the Petitioner's conviction, the Colorado Court of Appeals first addressed the issue raised in claim four of the Petition because resolution of that claim laid the groundwork for the court's determination of claim three.  This Court addresses the claims in the same order as did the Colorado Court of Appeals.

### a. Omission of the "after deliberation" element

The Petitioner asserts in claim four that the trial court's omission of the "after deliberation" element from the jury instruction defining the elements of attempted first degree murder violated his right to due process.

The Colorado Court of Appeals determined:

Defendant first argues the court did not properly instruct the jury on the mens rea for attempted first degree murder. We discern no plain error.

The trial court should include the mens rea element of an offense in the instruction defining the offense. *Gann v. People*, 736 P.2d 37 (Colo. 1987); *People v. Johnson*, 74 P.3d 349 (Colo. App. 2002).

Here, the trial court combined the pattern instructions used for criminal attempt and first degree murder after deliberation. CJI-Crim. 8:01, 9:01 (1993). The resulting instruction required that defendant have acted "with intent to commit the crime of Murder in the First Degree – After Deliberation," but did not include a definition of "after deliberation."

The separate instruction defining culpable mental states provides the statutory definition of "with intent" and "after deliberation." *See* §§ 18-1-415(5), 18-3-101(3), [COLO. REV. STAT. ("C.R.S.")] 2004. This instruction stated, "'After Deliberation' is part of the culpable mental state for Criminal Attempt to Commit Murder in the First Degree."

Taken together, the jury instructions informed the jurors that to find defendant guilty of attempted first degree murder, they must find that defendant "with intent" and "after deliberation" engaged in conduct constituting a substantial step toward committing first degree murder. Thus, the instructions, considered as a whole, adequately advised the jury of the required mens rea for the offense.

Accordingly, we conclude the trial court did not commit plain error in instructing the jury on the mens rea for attempted first degree murder.

Answer Ex. A (Doc. # 12-1, at 42-43 of 134); *see also* State Court Record Vol. 1 at 165, 169, 170.

The Colorado Court of Appeals reviewed the challenged jury instruction for plain error because the Petitioner failed to raise an objection at trial. Under Colorado case law, plain error occurs when the error so undermines the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). Colorado's plain error test is rooted in due process principles. *See Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987); *People v. Versteeg*, 165 P.3d 760, 765 (Colo. App. 2006). There is no practical distinction between the state court's plain error standard of review and the federal due process test which requires reversal when error "so infused the trial with unfairness as to deny due process of law." *Estelle*, 502 U.S. at 75. Accordingly, this Court defers to the Colorado Court of Appeals' ruling unless it unreasonably applied the test. 28 U.S.C. § 2254(d)(1); *Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005).

The Colorado Court of Appeals resolved the Petitioner's claim based on well-established Colorado precedent holding that a trial court's failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law. See *Miller*, 113 P.3d at 750; *People v. Harlan*, 8 P.3d 448, 472 (Colo. 2000) (holding error not reversible where jury instructions as a whole kept prosecution to its proper burden of proof concerning the elements of first-degree murder); *Gann v. People*, 736 P.2d 37, 39 (Colo. 1987) (no plain error where "attempt instruction omitted the requirement that the defendant act after deliberation, [but] the culpability element of deliberation

was prominently included in the definition of the crime of first-degree murder").  The state court's application of Colorado's plain error test was not unreasonable under *McGuire, Boyde,* or *Middleton*.  Accordingly, the Court finds and concludes that the Petitioner is not entitled to habeas relief on claim four.

### b.  failure to instruct properly on defense of voluntary intoxication

Petitioner alleges in claim three that the Due Process Clause required the trial court to instruct the jury that evidence of his voluntary intoxication could negate the "after deliberation" element of attempted first degree murder.

The instruction on voluntary intoxication stated:

You may consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the culpable mental state of specific intent.

The prosecution has the burden of proving all elements of the crime charged.  If you find the defendant was intoxicated to such a degree that he did not form the specific intent which is a required element of the crime of Criminal Attempt to Commit Murder in the First Degree – After  Deliberation, you should find the defendant not guilty of the charges.

Self-induced intoxication is not applicable to the crime of Illegal Discharge of a Firearm.

State Court Record, Vol. 1 at 166.

The Petitioner contends that the trial court should have included additional language instructing the jurors to consider whether or not intoxication negated the existence of the culpable mental state of "after deliberation."

In addressing the Petitioner's claim on direct appeal, the Colorado Court of Appeals initially recognized that "[w]hen a voluntary intoxication instruction is warranted, the trial court

22

should affirmatively instruct the jury that 'after deliberation' is part of the culpable mental state required by first degree murder and may be negated by evidence of voluntary intoxication. People v. Miller, [113 P.3d at 751]." Answer Ex. A (Doc. # 12-1, at 43-44 of 134). However, the Colorado Court of Appeals then rejected the Petitioner's claim under a plain error standard of review, finding that the instructions as a whole adequately instructed the jury:

> We are not persuaded by defendant's argument that because the definitions of "with intent" and "after deliberation" are in separate paragraphs of the mental states instruction discussed above, a reasonable juror would understand that intoxication should only be considered as to the mental state of "with intent." This instruction explicitly states that "'After deliberation' is part of the culpable mental state for Criminal Attempt to Commit Murder in the First Degree." Thus, the instructions as a whole correctly define the culpable mental state required to find defendant guilty.
> . . .
>
> Moreover, both parties argued in closing whether defendant's voluntary intoxication prevented him from deliberating. The prosecutor stated, "I have to prove to you that he was not so drunk that he couldn't form that intent," and then argued the facts of the case with regard to both forming intent to kill and deliberation. See, e.g., People v. Fichtner, 869 P.2d 539 (Colo. 1994) (counsel's closing argument relevant to impact of instructional error).
>
> Accordingly, we conclude the jury instruction on voluntary intoxication did not constitute plain error.

Id. (Doc. # 12-1, at 44-45 of 134).

The Colorado Court of Appeals' determination that the instructions as a whole, together with the prosecutor's clarification of the law during closing argument, advised the jurors adequately that evidence of the Petitioner's voluntary intoxication could negate the "after deliberation" element of attempted first degree murder was a reasonable application of

*McGuire, Boyde,* and *Middleton*.  The Court finds and concludes that the Petitioner is not entitled to habeas relief on claim three.

### 4. Claim Five

The Petitioner next claims that his conviction for attempted first degree murder after deliberation violates due process because the evidence was insufficient to show that his conduct was the product of intent and deliberation.

The Petitioner's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in the original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In addressing the Petitioner's claim, the Colorado Court of Appeals first discussed the mens rea element of attempted first degree murder under Colorado law:

> To support a guilty verdict of attempted first degree murder, the People must prove that the defendant has the specific intent to kill another person and acted with that intent after deliberation.  Sections 18-2-102(1), 18-3-102(1), C.R.S. 2004.  Thus, "after deliberation" and "intent" are distinct elements, which

together constitute the mental state of first degree murder. <u>People v. Miller</u>, [113 P.3d at 751].

> "After deliberation" means not only intentionally but also that the decision to commit the act was made after the exercise of reflection and judgment. Such an act "is never one which has been committed in a hasty or impulsive manner." Section 18-3-101(3), C.R.S. 2004. Deliberation can rarely be proved other than through circumstantial evidence. <u>People v. District Court</u>, 926 P.2d 567 (Colo. 1996).

Answer Ex. A (Doc. # 12-1 at 41 out of 134).

The Colorado Court of Appeals then determined that the following evidence at trial was sufficient to sustain his conviction for attempted first degree murder:

> . . . [T]he victim and the woman testified that defendant remained in the apartment for a few minutes and then went to his truck before approaching them with a gun. They also testified that when the victim started to drive away, defendant shot at his car multiple times before getting into his own truck and chasing the victim.

*Id.*

The Colorado Court of Appeals resolved the Petitioner's claim by applying a state law standard that is substantially the same as the *Jackson* standard. Answer Ex. A (Doc. # 12-1, at 40-41 out of 134). Accordingly, habeas relief is not warranted unless the state court's application of the *Jackson* standard was objectively unreasonable. *See Patton*, 425 F.3d at 795.

The Petitioner offers the following facts that, he thinks, demonstrate the absence of sufficient evidence to support the jury's finding that he acted with the requisite culpability to prove his commission of attempted first degree murder after deliberation: (1) he did not shoot at the victim's car until after the victim put the car in reverse and began to back up in the direction of where the Petitioner and the girlfriend were standing; (2) he stopped shooting at the vehicle

after the victim accelerated forward again to the edge of the parking lot and yelled that he would be back to "get" the Petitioner; (3) the Petitioner aimed his shots at the vehicle's tail lights, not at the victim; and, (4) it was uncontroverted that he was intoxicated at the time he fired the shots. Petition at 6e; Traverse at 18-19.

The Court is convinced, however, that the Colorado Court of Appeals' application of the *Jackson* standard was not unreasonable and was supported by the evidence presented at trial. The girlfriend testified that the Petitioner walked into the parking lot and got into his truck before he approached the victim and the girlfriend. State Court Record Vol. 11 at 94. Both the victim and the girlfriend testified that the Petitioner shot at the victim after he drove away from the Petitioner. *Id.*, Vol. 10 at 73-77; Vol. 11 at 96-97. The investigating police officer found bullet damage not only in the tail light assembly, but also in the roof and trunk of the vehicle. *Id.*, Vol. 10 at 202-204. Five shell casings found at the scene were fired from a loaded handgun recovered from the Petitioner's vehicle after the shooting. *Id.*, Vol. 10 at at 48-49, 199-201; Vol. 11 at 171-78. Although the evidence was uncontroverted that the Petitioner was intoxicated when he fired the shots, the jury could reasonably conclude, based on the totality of the evidence at trial, that his level of intoxication did not prevent him from forming the specific intent or deliberation necessary to find him guilty of attempted first degree murder. Viewing the evidence in the light most favorable to the prosecution, the Court finds that the Colorado Court of Appeals reasonably decided that a rational jury could find the Petitioner guilty beyond a reasonable doubt of attempted first degree murder after deliberation. Accordingly, the Court finds and concludes that the Petitioner is not entitled to habeas relief on claim five.

### 5. Claims Six and Seven

For his sixth claim, the Petitioner asserts that his representation at trial was constitutionally ineffective because his counsel failed to conduct an adequate pretrial investigation. In claim seven, the Petitioner alleges that his representation at trial was constitutionally ineffective because his counsel failed to request a curative instruction during voir dire after a potential juror expressed his opinion that Petitioner was guilty based on the juror's personal bias against citizens owning handguns.

To prevail on his claims that trial counsel's assistance was constitutionally ineffective, the Petitioner must show that: (1) his legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693. In evaluating prejudice, the Court considers the totality of the evidence before the jury. *Id.* at 695. The Court need not address both prongs of the *Strickland* inquiry if it determines that Petitioner fails on one. *Id.* at 697.

Conclusory assertions that counsel's performance was deficient are insufficient to warrant federal habeas relief. *See Cummings v. Sirmons*, 506 F.3d 1211, 1227 (10th Cir. 2007).

Because the Colorado Court of Appeals applied the *Strickland* standard in resolving the Petitioner's claims, *see* Answer Ex. B (Doc # 12-2, at 20-22), the Petitioner must demonstrate that the state court's decision was unreasonable under that standard.

### a. *Failure to conduct adequate pretrial investigation*

The Petitioner first contends that his counsel failed to conduct an adequate pre-trial investigation. He maintains that counsel "had a duty to visit the scene of the offense to develop facts regarding the configuration of the parking lot, to measure distances between where the offense took place in conjunction with where the victim's vehicle was parked at [sic], to check the lighting configurations, to check for stray bullets or bullet casings, and to check with surrounding tenants to see if they saw anything." Petition at 6f. The Petitioner further asserts that witnesses would have testified that he was in possession of a gun on his person all evening and did not go to his truck before the shooting for the purpose of obtaining the weapon. *Id.* Finally, he argues that a thorough examination of the victim's vehicle immediately after the shooting "would have yielded exculpatory evidence." *Id.*

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691.

The Colorado Court of Appeals resolved the Petitioner's sixth claim as follows:

Claims that counsel was ineffective for failure to investigate must be assessed for reasonableness under the circumstances, "applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Counsel's decision not to interview certain witnesses and to rely on other sources

of information, if made in the exercise of reasonable professional judgment, does not constitute ineffective assistance. *Davis* [*v. People*], 871 P.2d [769], 733 [(Colo. 1994)]. Faced with overwhelming evidence, counsel reasonably may conclude that "testimony of certain character witnesses would be of little help to the defense." *Id.*

Here, defendant claimed counsel was ineffective for failing to visit and investigate the crime scene and examine the victim's vehicle. He did not allege what evidence would have been uncovered through additional investigation or how it would have affected his case, but only that further investigation would have yielded exculpatory evidence. Contrary to his contention, these allegations are insufficient to merit a hearing. [citations omitted].

In any event, assuming the additional witnesses would have testified, as he claims, that defendant was in possession of a gun the entire evening rather than having obtained the gun from his vehicle just prior to the shooting, he does not articulate how that would have negated the mens rea element of the crime. Further, what evidence to present is within trial counsel's discretion as part of counsel's strategy and tactical decision-making. Defendant does not assert that counsel failed to conduct any investigation, nor allege any facts to suggest that counsel's decisions were unreasonable or fell outside the bounds of tactical choice. *See Davis*, 871 P.2d at 773.

Answer Ex. B (Doc # 12-2, at 24-26 of 87).

The Court finds that the Colorado Court of Appeals reasonably applied *Strickland* in determining that the Petitioner failed to demonstrate that counsel's performance was objectively unreasonable, or that the Petitioner was prejudiced as a result of the alleged deficiencies. Prosecution witnesses testified at trial about the configuration of the parking lot, the location where the spent bullet casings were found, and the lighting in the parking lot at the time the shooting occurred. The Petitioner does not articulate how additional investigation of the crime scene by defense counsel would have assisted his defense at trial. As such, he cannot show that counsel's failure to conduct further investigation of the parking lot where the shooting occurred was not a reasonable tactical decision.

Further, counsel did not have a constitutional duty to "check with surrounding tenants to see if they saw anything," Petition at 6f, in the absence of any facts or evidence to show that counsel had reason to believe that there were other witnesses to the crime.  *See Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) ("A defendant is not entitled to an attorney who will leave not the smallest stone unturned") (internal quotation marks omitted); *U.S. v. Sands,* 968 F.2d 1058, 1066 (10th Cir. 1992) (rejecting defendant's ineffective assistance of counsel claim based on failure to investigate potential witnesses where defendant failed to provide the names or probable testimony of the witnesses).  Even if there was an unknown witness to the shooting, the Petitioner cannot show a reasonable probability that the individual's testimony would have altered the outcome of his trial.  *See Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir.1990) (when an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must "demonstrate, with some precision, the content of the testimony they would have given at trial") (internal quotation marks omitted); *see also Sands*, 968 F.2d at 1066 (concluding that defendant's failure to explain how he was prejudiced by defense counsel's failure to investigate unidentified witnesses precluded ineffective assistance of counsel claim under *Strickland*).

Petitioner also contends that counsel should have interviewed witnesses who allegedly would have testified that the Petitioner was in possession of a handgun all evening.  However, the Petitioner has failed to demonstrate that counsel's decision not to interview those witnesses was anything other than a reasonable professional determination that their testimony would not reflect favorably on the Petitioner with the jury.  Moreover, even if the defense had presented

evidence to counter the girlfriend's testimony that the Petitioner walked into the parking lot and got into his truck before he approached the victim and the girlfriend, the Petitioner has not established a reasonable probability of a different verdict.  The evidence at trial demonstrated that after the Petitioner's girlfriend came home with another man, the Petitioner purposefully approached them in the apartment complex parking lot and fired shots at the victim while the victim was driving away from the Petitioner.  Testimony that the Petitioner was walking around with a handgun all evening would not have been directly exculpatory.

Finally, the Petitioner's contention that a thorough examination of the victim's vehicle immediately after the shooting "would have yielded exculpatory evidence" is not supported by any facts and therefore cannot be the basis for federal habeas relief.  *See Cummings*, 506 F.3d at 1227.  The record shows that a defense expert examined the bullet damage to the vehicle after the victim made some alterations to the roof top and tail light assembly and presented trajectory evidence at trial.  Even assuming that the defense could have provided a more thorough trajectory analysis at trial if the vehicle had been examined earlier, the Petitioner has not established a reasonable probability that the additional analysis would have affected the jury's decision.

Accordingly, the Court finds and concludes that the Petitioner is not entitled to federal habeas relief on claim six.

   **b.** *failure to request a curative instruction during voir dire*

The Petitioner next claims that his representation was constitutionally ineffective because his trial counsel failed to request a curative instruction during the voir dire proceeding after a

prospective juror expressed his general disapproval of alcohol consumption and possession of firearms.

The Colorado Court of Appeals resolved this claim as follows:

Defendant first contends that counsel was ineffective for failing to seek a curative instruction during voir dire after one potential juror, a doctor who was excused with a peremptory challenge, expressed that, because he had seen gunshot wounds and the effects of alcohol use, he was prejudiced against drinking and firearms. The claim does not satisfy the prejudice prong of the *Strickland* test because the doctor did not express any prejudicial information concerning this defendant. Further, the doctor states that, despite his concerns, he "probably could" be objective.

Further, voir dire, the process by which a fair and impartial jury is formed, necessarily occurs before trial and presentation of the evidence that the jury may consider. Contrary to defendant's contention, the jury was thoroughly instructed on the presumption of innocence, the prosecution's burden of proof, and the evidence presented at trial on which it must base its decision.

Because the record clearly establishes that the defendant is not entitled to relief, the trial court did not err in denying this claim without a hearing. [citation omitted].

Answer Ex. B (Doc. # 12-2, at 23-24 of 87).

The Colorado Court of Appeals' factual finding that the prospective juror did not express a bias against the Petitioner specifically is presumed correct and is supported by the record. State Court Record Vol. 9 at 22-23, 156-58. Any possible negative impact stemming from the prospective juror's comments was tempered by the trial court's preliminary instructions and admonishments to the jury. The trial court twice instructed the jurors during the voir dire proceeding about the presumption of innocence, the prosecutor's burden to prove the charges against the Petitioner beyond a reasonable doubt, and their responsibility to return a verdict based solely on the evidence at trial. State Court Record Vol. 9 at 21-22, 180, 182. The

prospective jurors were also told to put aside their preconceived notions and follow the law. *Id.* at 59. Additionally, the trial court reminded the jurors during the voir dire proceeding that the Petitioner is "not here on trial for carrying a gun." *Id.* at 173-74.

Under the circumstances, defense counsel's decision not to emphasize the prospective juror's comments by requesting a curative instruction beyond the court's instructions to the jury falls within the bounds of reasonable trial strategy. The Petitioner has failed to overcome the strong presumption that counsel's performance was reasonable. *See Strickland*, 466 U.S. at 689.

Moreover, the Petitioner does not point to any facts or evidence to support his conclusory assertion that the jurors who sat for his trial were prejudiced against him because of the prospective juror's comments. *See Hale*, 227 F.3d at 1320. And, as discussed previously, the evidence at trial supported the jury's guilty verdicts. The Petitioner has thus failed to establish a reasonable probability that the outcome of his proceeding would have been different without the prospective juror's remarks.

The Court finds that the Colorado Court of Appeals' resolution of the Petitioner's claim was reasonable under *Strickland* and that the court did not unreasonably determine the facts in light of the evidence presented. The Court thus finds and concludes that the Petitioner is not entitled to federal habeas relief on claim seven.

**6. Claim Eight**

In his final claim, the Petitioner asserts that his seventy-two year prison sentence as a habitual offender is disproportionate to the severity of his crimes, in violation of the Eighth Amendment.

The Petitioner was sentenced pursuant to Colorado's habitual criminal statute, C.R.S. § 18-1.3-801 (1.5) (2002), based on his conviction for attempted first degree murder in March 2003, and his two prior felony convictions for possession of a controlled substance and attempted escape, which occurred within ten years of his 2003 conviction. State Court Record Vols. 8 and 13. He will be eligible for parole in accordance with C.R.S. § 17-22.5-403 (2006).

A prison sentence in a noncapital case does not violate the Eighth Amendment unless it is "grossly disproportionate" to the defendant's crimes. *See Ewing v. California*, 538 U.S. 11, 23-24 (2003) (plurality opinion) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (noting that Court's precedents addressing Eighth Amendment challenges to a term of imprisonment "have not been a model of clarity," but that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years."). In determining whether a habitual offender sentence is grossly disproportionate to the offender's crimes, the Court initially makes a threshold analysis of the gravity of both the offender's triggering offense and his prior convictions in comparison to the harshness of the penalty imposed. *See Ewing* 538 U.S. at 28-29. If the threshold comparison does not lead to an inference of gross disproportionality, there is no further inquiry. *Id.* at 30-31; *see also Harmelin,* 501 U.S. at 1005.

In *Ewing*, the Supreme Court specifically recognized that the Eighth Amendment does not preclude a state legislature from inflicting increased punishment on recidivists to deter repeat offenders and to separate them from society for an extended period of time. *Ewing*, 538 U.S. at

25-27; *see also Rummel v. Estelle*, 445 U.S. 263, 285 (1980) ("[T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."). Thus, this Court's proportionality review of the Petitioner's state sentence must take into account Colorado's legitimate goals in sentencing offenders under the habitual criminal statute. *See Ewing* 538 U.S. at 29. State legislatures are afforded broad discretion to fashion a sentence that fits within the scope of the proportionality principle. *Lockyer*, 538 U.S. at 76; *Harmelin*, 501 U.S. at 999 (Kennedy, J., concurring in part and concurring in the judgment).

Moreover, on federal habeas review, this Court is mindful that the precise contours of the gross disproportionality principle are unclear under Supreme Court precedent. One thing is certain, however– the principle applies only in the "exceedingly rare" case. *Harmelin*, 501 U.S. at 1001; *Rummel*, 445 U.S. at 272; *Lockyer*, 538 U.S. at 73; *Ewing*, 538 U.S. at 21 (quoting *Rummel*, 445 U.S. at 272).

The Colorado Court of Appeals adjudicated the Petitioner's claim as follows:

Defendant also contends that his sentence of seventy-two years in the DOC is disproportionate to his crime. Again, we disagree.
. . .

When we conduct an abbreviated proportionality review under the habitual criminal statute, we must scrutinize the offenses in question to determine whether the gravity or seriousness of the triggering crime in combination with the gravity or seriousness of the underlying crimes are so lacking in gravity or seriousness to suggest that the sentence is grossly disproportionate. *See People v. Deroulet*, 48 P.3d 520, 524-25 (Colo. 2002); *People v. Mershon*, 874 P.2d 1025, 1031 (Colo. 1994). If there is no inference of gross proportionality, we inquire no further. *See Deroulet*, 48 P.3d at 524. "In almost every case, 'the abbreviated proportionality review will result in a finding that the sentence is not constitutionally disproportionate, thereby preserving the primacy of the General Assembly in

crafting sentencing schemes.'" *People v. Martinez*, 83 P.3d 1174, 1180 (Colo. App. 2003) (quoting *Deroulet*, 48 P.3d at 526).

To determine whether a crime is grave or serious, we consider the "harm caused or threatened to the victim or to society and the culpability of the offender. *Deroulet*, 48 P.3d at 524. . . .

Here, the triggering offense is the class two felony conviction for attempted first degree murder after deliberation, a violent crime involving a high risk of death that is grave and serious per se. *See Deroulet* 48 P.3d at 524; *Close v. People*, 48 P.3d 528, 538 (Colo. 2002); [*People v.*]*Reese*, 155 P.3d [155] P.3d [477,] 479 [(Colo. App. 2006)].

The offenses of possession of a controlled substance, a class four felony, and attempted escape, a class five felony, formed the basis of the habitual criminal convictions in this case. *See* § 18-1.3-801(1.5), C.R.S. 2007. Felony possession of a controlled substance has been held to be a grave and serious crime, *see People v. Merchant*, 983 P.2d 108, 116-17 (Colo. App. 1999), as has escape. *See* [*People* v.] *Gaskins*, 923 P.2d [292], 295-96 [(Colo. App. 1996)].

However, attempted escape has been held not to be a grave and serious offense. *See Reese*, 155 P.3d at 480. Nevertheless, a proportionality claim may properly be rejected as long as a defendant's offenses in combination include grave and serious offenses. *See Merchant*, 983 P.2d at 117; *see also Reese*, 155 P.3d at 480. Such is the case here.

Although the sentence is severe, it is not grossly disproportionate to the crimes in this case.

Answer Ex. B (Doc. # 12-2, at 26-29 of 87).

The state court's determination that the Petitioner's felony convictions for attempted first degree murder and possession of a controlled substance are grave and serious crimes under Colorado law is not subject to challenge in this federal habeas proceeding. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

The Colorado Court of Appeals resolved the Petitioner's claim pursuant to state law cases that applied the correct standard under *Harmelin.* The Court finds that the Colorado Court of Appeals' resolution of the Petitioner's claim was a reasonable application of *Harmelin* and other Supreme Court precedent because the Petitioner's circumstances do not differ significantly from those in cases where the Supreme Court has rejected Eighth Amendment proportionality challenges. *See e.g. Rummel*, 445 U.S. at 265-66, 284-85 (Eighth Amendment not violated where three-time offender was sentenced to life imprisonment with the possibility of parole under a state recidivism statute, where offender's triggering offense was a conviction for felony theft-"obtaining $120.75 by false pretenses" and his two prior offenses were felony convictions for "fraudulent use of a credit card to obtain $80 worth of goods or services," and "passing a forged check in the amount of $28.36"); *Ewing*, 538 U.S. at 28-31 (rejecting Eighth Amendment proportionality challenge to sentence of twenty-five years to life for the triggering offense of theft of three golf clubs, where the petitioner had four prior convictions for serious or violent felonies); *accord Harmelin*, 501 U.S. at 994 (holding that a sentence of life imprisonment without parole is not grossly disproportionate to a first-time offender's conviction of possession of cocaine); *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (forty-year sentence for possession and distribution of nine ounces of marijuana did not violate the Eighth Amendment). The Colorado Court of Appeals' decision is consistent with the legal principle articulated and applied in *Rummel*, *Harmelin*, *Lockyer* and *Ewing* that only in the "exceedingly rare" case will a criminal sentence for a term of years be deemed grossly disproportionate to the severity of the crime. The

Court therefore finds and concludes that the Petitioner is not entitled to habeas relief on his eighth claim.

For the reasons discussed above, it is ORDERED that Petitioner Tony Cooper's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 1) is **DENIED**.  It is FURTHER ORDERED that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right.

The Clerk of the Court shall close this case.

Dated this 1st day of November, 2010

BY THE COURT:

_____
Marcia S. Krieger
United States District Judge